I respectfully and reluctantly dissent from the majority opinion. I say reluctantly because the proposition that a criminal or traffic offender can recover damages from a peace officer and/or his governmental employer for damages incurred as a result of his intentional and voluntary decision to flee lawful arrest is troubling.[1] When is any high speed pursuit justified? Does it matter if the fleeing offender is a murderer? Despite my confessed reservations concerning the existence of a duty to the fleeing offender, I believe York v. Ohio State Hwy.Patrol (1991), Ohio St.3d 143, recognizes such a duty exists.
I disagree with the majority's and the Moore Court's interpretation of the definition of "emergency call". I find appellants' interpretation of the statute correct given the placement of the phrase "including, but not limited to". The phrase "including, but not limited to" quantifies the manner in which a peace officer is called to duty, such as by communications from citizens, by police dispatches, by personal observations, or the like. It does not quantify or, in any way, modify "inherently dangerous situations." I believe in order to constitute an "emergency call", the call to duty must involve an inherently dangerous situation.
Applying the majority's and the Moore court's interpretation of R.C. 2744.01(A), a peace officer who observes a littering offense committed by the driver of a passing car would be responding to an "emergency call" because the officer would be required to act with immediacy to apprehend the offender despite the fact that littering is not an "inherently dangerous" situation. I note the example listed in the majority opinion of when a police officer may be acting in the course of his or her duties and is not on an "emergency call" (a peace officer driving from the scene of an accident to file an accident report) does not require "immediacy". However, I share the majority's concern that to require an inherently dangerous situation to exist before sovereign immunity applies places an "unnecessary chilling effect" upon law enforcement's performance of its duties owed to the public. (Majority Opinion at 9).
Although I agree with appellants' interpretation of "emergency call", I find reasonable minds could find, at the time of the third chase, Officer Smith was responding to an "emergency call". The City presented evidence which establishes that Officer Smith observed the decedent traveling at a high rate of speed through a residential area. I find reasonable minds could conclude such activity creates an inherently dangerous situation. In response to that observation, the officer initiated his third pursuit. A police officer's personal observation of a vehicle's speeding through a residential area may constitute an "emergency call" to which an officer must respond. See, e.g., York v. OhioState Hwy. Patrol (1991), 60 Ohio St.3d 143; Rodgers v. DeRue
(1991), 75 Ohio App.3d 200.
If the trier of fact concludes Officer Smith was not responding to an emergency call, appellants need only prove ordinary negligence. However, if the trier of fact concludes Officer Smith was responding to an emergency call, appellants bear the burden of demonstrating that Officer Smith's conduct was wilful or wanton before liability can attach to appellee.
Assuming, arguendo, it is established Officer Smith was responding to an emergency call, I find reasonable minds could conclude that Smith's operation of his motor vehicle constituted wilful or wanton misconduct.
The undisputed evidence in the record establishes that the Can-Com supervisor called off the chase while Smith was in the vicinity of the intersection of Shorb Avenue and 18th Street. However, the evidence regarding when Smith actually terminated his pursuit, if at all, is disputed. Officer Smith, responding to an emergency call, followed the motorcycle north on Shorb Avenue. As Smith initiated a turn west onto 18th Street, he was instructed to terminate the pursuit. During his deposition, Smith testified he complied with those instructions just west of the intersection. The officer further testified his emergency lights and siren were activated at all times during the chase. However, in their affidavits, the Browns stated they observed a police car following a motorcycle at a high rate of speed further west on 18th Street, closer to Fulton Road. According to the Browns, the officer was not only traveling at a high rate of speed, but also did not have his lights and siren activated.
Reasonable minds could differ in their conclusions of whether Smith's continued pursuit of the motorcyclist at a high rate of speed through a residential area after he had been called off constituted a deliberate or reckless disregard for the safety of the decedent. Therefore, I conclude that summary judgment was not appropriate as to this issue even if it was undisputed Officer Smith was responding to an emergency call. Accordingly, I find the trial court erred in granting the City's Motion for Summary Judgment.
Assuming the decedent's conduct of speeding through a residential area contributed to his death, if the jury concludes Officer Smith acted in a wilful and wanton manner, the jury could also find that Smith's actions were a proximate cause, though concededly not the sole proximate cause, of the decedent's demise. The majority's time/distance analysis is one best left to the jury. Any issues of contributory negligence and/or assumption of the risk are likewise more appropriate for a jury to determine.
For the foregoing reasons, I would sustain appellant's assignments of error, reverse the judgment of the trial court and remand the case to that court for further proceedings.
 ___________________________ JUDGE WILLIAM B. HOFFMAN
[1] I hasten to note I have no reservation as to the existence of a duty to innocent third parties during high speed chases.